*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRISTOPHER WILLIAM ROBERT WILSON,

Plaintiff-Appellant,

v

BRK, INC., and R & C LAND, INC., d/b/a
DIAMONDBACK SALOON,

Defendants-Appellees.

FOR PUBLICATION
May 30, 2019
9:10 a.m.

No. 342449
Wayne Circuit Court
LC No. 16-008051-NO

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

MARKEY, J.

Plaintiff Kristopher Wilson appeals by right the trial court's order granting summary disposition in favor of defendants BRK, Inc., and R & C Land, Inc., d/b/a Diamondback Saloon, under MCR 2.116(C)(10) in this action arising out of plaintiff's fall from a wheelchair when exiting defendants' bar. We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants' bar has a cement ramp that starts near handicapped parking spots, runs along the side of the building, and gradually slopes upward to a doorway, allowing access for physically-limited patrons. The top of the ramp meets the top of a separate stairwell, both leading to a single set of doors into the bar. At the door's threshold is a 3½-inch-tall, yellow-painted step that must be navigated by handicapped and non-handicapped customers alike. Plaintiff is confined to a wheelchair. After a visit to the bar one evening, he began to exit the establishment with a friend, who was pushing the wheelchair. As plaintiff went through the doorway and over the step, the wheelchair tipped forward, throwing plaintiff to the ground and causing injuries. Plaintiff had patronized the bar on three or four previous occasions, negotiating the step without incident with the assistance of friends.

Plaintiff filed suit against defendants. Plaintiff alleged that the entranceway step constituted a barrier in violation of federal, state, and local laws protecting individuals with

disabilities. He further asserted that defendants were negligent and grossly negligent for failing to maintain the premises in a reasonably safe condition, failing to warn customers about the defect or hazard, and for failing to replace the entranceway step with a ramp. Finally, plaintiff claimed that defendants had created a nuisance by allowing an inherently dangerous condition to exist, placing "those on the premises in a position of peril." Subsequently, defendants moved for summary disposition, arguing in relevant part that plaintiff's action sounded in premises liability, not ordinary negligence or nuisance, that the entranceway step was open and obvious with no special aspects, that there was no code or regulatory violation, and that the open and obvious danger doctrine applied regardless of any regulatory or code violation.

In his response brief, plaintiff argued that the bar's entranceway as constructed with the step was not in compliance with MCL 125.1351 *et seq.*, which provide for the use of public facilities by the physically limited and require barrier-free access. Plaintiff claimed that the open and obvious danger doctrine does not apply to a violation of a statutory duty and further maintained that the Stille-DeRossett-Hale Single State Construction Code Act (SCCA), MCL 125.1501 *et seq.*, incorporated the Building Officials and Code Administrators International, Inc., Manual (BOCA code) pursuant to MCL 125.1504(2), and that the BOCA code required, before the bar's construction in 1977, that at least one entranceway to a public facility be handicap accessible. Additionally, plaintiff claimed that the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1101 *et seq.*, was implicated and violated.[1] Plaintiff also contended that the step was effectively unavoidable because the step was located at the only entrance/exit point available to a wheelchair-bound patron. Finally, plaintiff argued that some of his claims sounded in ordinary negligence and nuisance, not premises liability, and that the open and obvious danger doctrine does not apply to ordinary negligence and nuisance claims.

The trial court heard defendants' motion for summary disposition and took the matter under advisement. The court later issued a written opinion and order granting defendants summary disposition. The trial court ruled that the case sounded in premises liability, not ordinary negligence, that the step was open and obvious, that there were no special aspects of the step that would avoid application of the open and obvious danger doctrine, and that "[a]ny alleged violation of the building code . . . does not negate the application of the open and obvious doctrine." The court also noted that there was no evidence that the entranceway step had ever been found to be in violation of a statute or building code. Indeed, the trial court explained that defendants presented undisputed evidence that the building had been inspected and approved by state and local authorities several times since its construction in 1977 and had never been cited for a violation. Plaintiff appeals by right.

## II. ANALYSIS

### A. STANDARD OF REVIEW

---

[1] Specifically, plaintiff cited MCL 37.1102(1), which provides that "[t]he opportunity to obtain . . . full and equal utilization of public accommodations . . . without discrimination because of a disability is guaranteed by this act and is a civil right."

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). We also review de novo issues of statutory construction. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## B. ORDINARY NEGLIGENCE VERSUS PREMISES LIABILITY

Plaintiff maintains that defendants engaged in ordinary negligence by directing physically-limited invitees to use the entrance where a customer would be forced to encounter the 3½-inch step or threshold. Plaintiff states that the ramp, which defendants knew would be used for handicap access to the business, leads directly to the problematic entranceway. We note that plaintiff does not present any appellate argument attempting to resurrect his nuisance claim.

"It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Id.*; see also *Compau v Pioneer Resource Co, LLC*, 498 Mich 928; 871 NW2d 210 (2015). The open and obvious danger doctrine is inapplicable to a claim of ordinary negligence. *Laier v Kitchen*, 266 Mich App 482, 484; 702 NW2d 199 (2005). "A plaintiff cannot avoid the open and obvious danger doctrine by claiming ordinary negligence when the facts only support a premises liability claim[.]" *Jahnke v Allen*, 308 Mich App 472, 476; 865 NW2d 49 (2014).

Plaintiff's lawsuit ultimately concerns an injury arising from an allegedly dangerous condition on the land, i.e., a step that must be navigated by physically-limited patrons in order to enter and exit the bar. Plaintiff's effort to frame a portion of his complaint as alleging ordinary negligence is strained. Plaintiff is essentially arguing that defendants created the dangerous condition by directing handicapped customers to use the step. This characterization, however, does not suffice to defeat the fact that this is a premises liability action. *Buhalis*, 296 Mich App at 692. The trial court did not err in ruling that the portions of the complaint that plaintiff asserts sound in ordinary negligence actually sound in premises liability.

## C. SPECIAL ASPECTS – EFFECTIVELY UNAVOIDABLE PRONG

Plaintiff next contends that the entranceway step, which constituted a barrier to invitees using a wheelchair, was effectively unavoidable because the doorway was the only one that a wheelchair-bound customer could use to exit the establishment.

-3-

An exception to the duty owed for open and obvious dangers arises when special aspects of a condition make even an open and obvious risk unreasonable. *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012).[2] Special aspects exist when an open and obvious hazard remains unreasonably dangerous or when it is effectively unavoidable. *Id.* at 461-463. The *Hoffner* Court further explained:

> [W]hen confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited,* extreme situations. Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is *unreasonably* so. And it must be *more than* theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances. An "effectively unavoidable" hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its *unreasonable risk of harm.* [*Id.* at 472-473 (citations omitted).]

Plaintiff analogizes his case to the hypothetical "special aspect" situation given in *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 518; 629 NW2d 384 (2001), wherein the Supreme Court stated:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable.

Wheelchair-bound customers entering and exiting the bar are forced to encounter the step. This fact necessarily narrows our focus, leaving only one pertinent question—was the

---

[2] Considering whether a danger or defect is open and obvious is an integral aspect of defining the duty owed by an invitor to an invitee. *Hoffner*, 492 Mich at 460. A possessor of land does not owe a duty to protect or warn an invitee of dangers that are open and obvious. *Id.* This is "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id.* at 461. "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* The required analysis involves examination of the objective nature of the condition of the premises. *Id.* There is no dispute that plaintiff was an invitee and that the step was open and obvious.

hazard effectively avoidable because plaintiff could have chosen not to patronize the bar in the first place? Our Supreme Court in *Hoffner*, 492 Mich 450, held that ice on a sidewalk in front of the only entrance to a fitness center was an avoidable open and obvious danger even though the plaintiff had a paid membership to use the center. The Court concluded that "[a] general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a 'special aspect[.]' " *Id.* at 472-473. The *Hoffner* Court noted "that the standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard." *Id.* at 469. The Supreme Court expressly abrogated this Court's decision in *Robertson v Blue Water Oil Co*, 268 Mich App 588, 594; 708 NW2d 749 (2005), where the panel held:

> Finally, and more significantly, plaintiff was a *paying customer* who was on defendant's premises for defendant's commercial purposes, and thus he was an *invitee* of defendant. As our Supreme Court noted, invitee status necessarily turns on the existence of an invitation. Defendant's contention that plaintiff should have gone elsewhere is simply inconsistent with defendant's purpose in operating its gas station. The logical consequence of defendant's argument would be the irrational conclusion that a business owner who invites customers onto its premises would never have any liability to those customers for hazardous conditions as long as the customers even technically had the option of declining the invitation. [Citations and quotation marks omitted.]

The Court in *Hoffner* ruled that "we reject the *Robertson* majority's analysis of the 'effectively unavoidable' doctrine." *Hoffner*, 492 Mich at 468 n 31. *Robertson* would have supported plaintiff's position in the instant action, but that holding is no longer viable given *Hoffner*.

We conclude that *Hoffner* dictates that we conclude that the entranceway step was avoidable because plaintiff was not compelled to patronize the bar and confront the step. And with respect to *Lugo*, we note there was no indication in the Court's hypothetical that the water in the building had been confronted by customers when they first entered the building.[3] Therefore, *Lugo* does not support plaintiff's argument. In sum, we affirm the trial court's determination that as a matter of law, no special aspects existed.

## D. STATUTORY VIOLATION

In a third and final attempt to avoid application of the open and obvious danger doctrine, plaintiff argues that the statutory duty to provide access for physically-limited persons requires constructing at least one barrier-free entrance/exit and that this statutory duty takes precedence over common-law defenses such as the open and obvious danger defense. Plaintiff initially cites MCL 125.1352(1), which provides:

---

[3] To view or construe the hypothetical in *Lugo* to the contrary would necessarily create tension between *Lugo* and *Hoffner*.

A public facility or facility used by the public the contract for construction of which or the first contract for construction of a portion of which is made after July 2, 1974, shall meet the barrier free design requirements contained in the state construction code.[4]

Thus, with respect to the particular design requirements that a facility must meet to qualify as barrier free, MCL 125.1352(1) incorporates by reference those requirements contained in the "state construction code." And that code—the SCCA—provides, in part, as follows:

The code shall consist of the international residential code, the international building code, the international mechanical code, the international plumbing code, the international existing building code, and the international energy conservation code published by the international code council and the national electrical code published by the national fire prevention association, with amendments, additions, or deletions as the director determines appropriate. The director may adopt all or any part of these codes or the standards contained within these codes by reference. [MCL 125.1504(2).]

Thus, according to plaintiff, the BOCA code is ultimately incorporated into the statutory scheme. Below, plaintiff submitted part of the 1975 BOCA code covering portions of Section 316.0, which concerned the physically handicapped and aged. Section 316.3 addressed building entrances, providing:

At least one (1) primary entrance at each grade floor level of a building or structure shall be accessible from the parking lot or the nearest street by means of a walk uninterrupted by steps or abrupt changes in grade and shall have width of not less than five (5) feet and a gradient of not more than one (1) foot in twenty (20) feet or a ramp meeting the requirements of Section 615.0. The entrance shall comply with requirements of Section 612.0.

"The open and obvious danger doctrine cannot be used to avoid a specific statutory duty." *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 720-721; 737 NW2d 179 (2007); see also *Woodbury v Bruckner*, 467 Mich 922; 658 NW2d 482 (2002) (remanding case because the open and obvious danger doctrine cannot be employed to avoid the application of a duty established by statute), and *Jones v Enertel, Inc*, 467 Mich 266, 270; 650 NW2d 334 (2002) (rejecting argument that the open and obvious danger doctrine can apply to avoid the statutory duty to maintain sidewalks in reasonable repair[5]). To the extent that the trial court was

_____

[4] MCL 125.1351(b) defines "barrier free design" as "those architectural designs which eliminate the type of barriers and hindrances that deter physically limited persons from having access to and free mobility in and around a building, structure, or improved area."

[5] We note that the Legislature has since inserted language into the statute addressing a municipality's duty to keep sidewalks in reasonable repair, providing that a municipal corporation may now assert common-law defenses, "including, but not limited to, a defense that

of the view that the statutory-duty exception to the open and obvious danger doctrine is only implicated in regard to a lessor's statutory obligations under MCL 554.139, we find the court was mistaken. It is true that a lessor or landlord cannot rely on the open and obvious danger doctrine if a duty was violated under MCL 554.139. See *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 425 n 2; 751 NW2d 8 (2008) ("[A] defendant cannot use the 'open and obvious' danger doctrine to avoid liability when the defendant has a statutory duty to maintain the premises in accordance with MCL 554.139(1)(a) or (b)."). There is no indication in the caselaw, however, that the statutory-duty exception to the open and obvious danger doctrine is limited to duties created under MCL 554.139. Indeed, as noted above, the statutory-duty exception was recognized in *Jones*, 467 Mich at 270, in relation to a governmental agency's duty to maintain sidewalks in reasonable repair.

In support of its position that the open and obvious danger doctrine applied regardless of plaintiff's argument that a statutory duty existed to provide a barrier-free entranceway, the trial court relied on *Schollenberger v Sears, Roebuck & Co*, 925 F Supp 1239 (ED Mich, 1996), and *Kennedy*, 274 Mich App 710. The trial court's reliance on these cases was misplaced.

As a federal district court decision, *Schollenberger* has no binding precedential value to this Court. See *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts."). Furthermore, *Schollenberger* predated the development in Michigan law of the principle that the open and obvious danger doctrine cannot be employed to avoid a statutory duty or obligation. *Jones*, 467 Mich at 270; *Woodbury*, 467 Mich at 922; *Kennedy*, 274 Mich App at 720-721. It appears from our research that this principle was first clearly expressed in Michigan jurisprudence in 2002 in our Supreme Court's *Jones* decision. In fact, the federal court in *Schollenberger* did not even examine the specific issue of whether a statutory violation obviates application of the open and obvious danger doctrine. Accordingly, we do not find *Schollenberger* relevant.

In *Kennedy*, 274 Mich App 710, the plaintiff was injured when he slipped on crushed grapes or grape residue on the floor of the defendants' grocery store. After rejecting the plaintiff's various arguments that the hazard was not open and obvious, this Court turned its attention to his assertion "that the open and obvious danger doctrine cannot bar recovery because defendants breached a separate and independent duty created by the International Property Maintenance Code." *Id.* at 719. The *Kennedy* panel first noted:

> Neither the record nor the briefs contain any indication that the International Property Maintenance Code had been adopted by the municipality where plaintiff's accident occurred. Likewise, we find no support for plaintiff's assertion that a violation of the International Property Maintenance Code is equivalent to a violation of state statute. Nonetheless, we will address plaintiff's code-based arguments for purposes of this appeal. [*Id.* at 719 n 1.]

---

[a] condition was open and obvious." MCL 691.1402a(5); 2016 PA 419, effective January 4, 2017.

The Court explained that "even in cases of code violations, the relevant inquiry remains whether any special aspects rendered the otherwise open and obvious condition unreasonably dangerous." *Id.* at 720. The Court concluded as a matter of law that the grapes on the supermarket floor did not create an unreasonably high risk of harm. *Id.* Reading somewhat between the lines, the *Kennedy* panel determined that a code violation did not preclude application of the open and obvious danger doctrine. This Court, however, then addressed the plaintiff's additional argument that even if the grapes were open and obvious, the defendants violated a statutory duty to provide a safe workplace as required by the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.*, and administrative regulations promulgated under MIOSHA, rendering the open and obvious danger doctrine inapplicable. *Id.* at 720-721. The panel acknowledged that "[t]he open and obvious danger doctrine cannot be used to avoid a specific statutory duty." *Id.* The Court then ruled:

> MIOSHA and the regulations enacted under MIOSHA apply only to the relationship between employers and employees and therefore do not create duties that run in favor of third parties. Accordingly, MIOSHA does not impose a statutory duty in favor of third parties in the negligence context. Nor do administrative regulations enacted under MIOSHA impose duties in favor of third parties in the negligence context. Neither MIOSHA nor the administrative regulations enacted under it imposed a duty on defendants running in favor of plaintiff. Plaintiff may not rely on MIOSHA and the MIOSHA regulations to escape application of the open and obvious danger doctrine in this premises liability case. [*Id.* at 721 (citations omitted).]

Contrary to the circumstances presented in *Kennedy*, the instant case entails statutory requirements to provide handicap-accessible, barrier-free entranceways to facilities open to the public. These requirements are plainly and directly intended to benefit and protect physically-limited persons such as plaintiff. A barrier-free design that eliminates hindrances that deter physically-limited persons from having access and free mobility to buildings is generally required under MCL 125.1352(1) and MCL 125.1351(b).[6] Accordingly, the trial court erred in

---

[6] With respect to the PDCRA, plaintiff merely cites the act for the proposition that it is the public policy of this state to encourage the fullest participation possible in all areas of life by persons who are physically handicapped. The PDCRA makes it unlawful for a person to "[d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids." MCL 37.1302(a). A person who alleges a violation of the PDCRA "may bring a civil action for . . . damages[.]" MCL 37.1606(1). And the PDCRA "shall not diminish the right of a person to seek direct and immediate legal or equitable remedies in the courts of this state." MCL 37.1607. Here, plaintiff's case is not about being denied equal enjoyment of the bar because of his disability; he enjoyed an evening of drinking and pool at the

determining that the open and obvious danger doctrine applied to plaintiff's allegations that defendants' entranceway step violated a statutory duty owed to persons with physical limitations.

With respect to whether there was a statutory violation, the trial court appeared to accept defendants' contention that the entranceway step did not constitute a violation, as reflected in the fact that despite numerous inspections over the years by state and federal authorities, no violations were documented. Defendants argue that plaintiff presented no evidence showing a statutory or code violation regarding the entranceway or step. Moreover, according to defendants, construction plans had been reviewed and the premises had been inspected over the years by the Barrier Free Design Board, Van Buren Township, and by Wayne County. Defendants were never issued any violations or citations associated with the entranceway and provided supporting documentation to that effect below.

Plaintiff, however, submitted an unsigned and undated "Field Correction Notice" (FCN) pertaining to the bar with the insignia of Van Buren Township at the top of the document and which ostensibly indicated a need for a correction in regard to "B/F STEP FRONT DR."

A building inspector for Van Buren Township testified in her deposition that the bar fell under the barrier-free requirements of MCL 125.1351 and MCL 125.1352. In reference to the FCN, the inspector acknowledged that it came from the township's files, but she could not tell who authored the notice or when it was prepared. She additionally testified:

> *Q.* [W]hat does the first line [of the FCN] say?
>
> *A.* "BF step front door."
>
> *Q.* What does that mean to you?
>
> *A.* I'm going to say barrier-free step front door.
>
> *Q.* Does the [bar] have a barrier-free step at the front door?
>
> *A.* From the pictures you showed me, I'm going to say no.
>
> *Q.* And so it didn't comply with the [FCN]?
>
> *A.* Correct.
>
> *Q.* And it didn't comply with the code that we already talked about, correct?
>
> *A.* Correct.

---

bar. Rather, his suit encompasses a request for money damages related to a physical injury caused by an allegedly hazardous step that was not in compliance with barrier-free statutory mandates under MCL 125.1351 *et seq.*, the SCCA, and the statutorily-incorporated BOCA code.

The inspector could not say whether defendants ever received the FCN, and other evidence indicates or suggests that defendants had not been sent or received it.

Although the inspector recalled having inspected the bar in the past, she did not remember the step. She indicated that had she noticed the step, she probably would have made a note of it. In testifying about a walk-through of the bar in 2014, which was focused mostly on alterations in the kitchen area, the inspector stated that no code violations were issued and that permits were approved. This had also been the case earlier in 2014 in regard to a new deck for the bar and a corresponding inspection. But the inspector also testified, "[T]he barrier-free might have got missed[.]" With respect to an inspection of the bar in 2003 relative to a liquor license, the township inspector testified that no mention was made of any code violation in connection with the entranceway. Aside from the FCN, the inspector's examination of the files pertaining to the bar did not reveal any citations or violations in regard to the entranceway step.

Defendants presented documentation showing that in 1977-1978 the Barrier Free Design Board had granted some exceptions based on the submitted architectural plans for the facility unrelated to the main entranceway and that the Board ultimately approved of the plans. Defendants also submitted a 1978 letter from the Wayne County Sheriff's Department to the Liquor Control Commission. The letter provided, "We toured the facility at the above address, made the necessary observations, found the building to conform to all rules, regulations and qualifications necessary to complete the inspection and give approval." Additionally, defendants presented a plethora of documentation regarding building inspections that had been conducted over the years for various reasons, none of which showed any statutory or code violations arising from the entranceway step. It is unnecessary for us to delve into the details of those documents.

We cannot accept the trial court's or defendants' logic that simply because the bar was never issued any violations or citations relative to the step, defendants must have been in compliance with the statutory barrier-free requirements. In response to defendants' summary disposition motion under MCR 2.116(C)(10), which was supported by appropriate documentation, plaintiff, of course, was obligated to submit evidence sufficient to create a genuine issue of material fact. MCR 2.116(G)(4). Even if we reject consideration of the FCN, as defendants adamantly argue we must because of its multiple inadequacies, we note that the township's building inspector's testimony was sufficient to create a genuine issue of material fact regarding whether the entranceway step violates a statutory duty with respect to access for persons with physical limitations. She testified that, as revealed in the photographs, the entranceway was not barrier free in light of the presence of the step.

The next issue that we address, but ultimately do not resolve, concerns whether a remedy is available for the alleged statutory violation. Defendants argue that the statutory provisions relied on by plaintiff do not provide independent tort remedies for his alleged physical injuries arising from the fall; therefore, the action must be dismissed. In *Allison*, 481 Mich at 426 n 3, our Supreme Court stated:

> Although the nature and extent of plaintiff's remedy are not at issue in this case, we note that, typically, a plaintiff's remedy for breach of contract is limited to damages that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made. The purpose of

-10-

this remedy is to place the nonbreaching party in as good a position as if the contract had been fully performed. [Citations and quotation marks omitted.]

As mentioned earlier, *Allison* concerned a lessor's duties under MCL 554.139, which create implied covenants in leases, thereby explaining the Supreme Court's reference to remedies for breach of contract.

On this issue, defendants rely on *Spagnuolo v Rudds #2, Inc*, 221 Mich App 358; 561 NW2d 500 (1997), and plaintiff relies on *Cebreco v Music Hall Ctr for the Performing Arts, Inc*, 219 Mich App 353; 555 NW2d 862 (1996). We find neither case particularly helpful. Contrary to plaintiff's suggestion, this Court in *Cebreco* did not address a claim for physical injury under the PDCRA. Rather, the issue of the plaintiff's alleged physical injury was examined solely in the context of a claim against police officers and the question of governmental immunity. *Cebreco*, 219 Mich App at 355-356, 361-362.

In *Spagnuolo*, the wheelchair-bound plaintiff brought suit against a restaurant owner, alleging claims of negligence and violation of the Handicappers' Civil Rights Act (HCRA), now known as PDCRA. She sought damages for physical injuries that she suffered when her wheelchair slipped off a sidewalk and flipped over while she was trying to maneuver the wheelchair around a trash barrel outside the restaurant upon leaving the business. *Spagnuolo*, 221 Mich App at 359-360. The plaintiff asserted that she was forced to take the route involving the sidewalk because a designated handicap door on the other side of the restaurant was either locked or stuck, in violation of the HCRA. *Id.* at 362-363. This Court, in affirming summary dismissal of the plaintiff's lawsuit, held

In short, plaintiff was fully accommodated during her visit to defendant's restaurant. Because the HCRA requires no more, plaintiff could not state a valid claim based on the HCRA. Specifically, no language in the HCRA provides an independent tort remedy for persons injured at a place of public accommodation because they are handicapped. Accordingly, plaintiff's HCRA claim is so clearly unenforceable as a matter of law that no factual development could provide a basis for recovery, and the trial court properly granted summary disposition of plaintiff's HCRA claim for defendant pursuant to MCR 2.116(C)(8). [*Id.* at 363 (citations omitted).]

At most, *Spagnuolo* might support a determination that plaintiff does not have a cause of action under the PDCRA, which we have already alluded to in footnote 6 of this opinion; the PDCRA does not fit the contours of this case that entails a physical injury. The question becomes whether a violation of the barrier-free requirements of MCL 125.1352(1) allows or provides for a tort remedy to compensate a party for physical injuries sustained as a result of the violation. Because the trial court never reached the issue regarding whether a remedy is available assuming a statutory violation, we conclude it appropriate to remand this case to allow the parties to better develop their arguments and for the trial court to initially address that additional issue. On remand, we direct the trial court to consider any relevant statutory provisions and the Michigan Supreme Court's decisions in *Lash v Traverse City*, 479 Mich 180; 735 NW2d 628 (2007), *Gardner v Wood*, 429 Mich 290; 414 NW2d 706 (1987), and *Pompey v*

*Gen Motors Corp*, 385 Mich 537; 189 NW2d 243 (1971), which address the issue of whether a remedy or cause of action for money damages arises from a statutory violation.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No party having fully prevailed on the issues presented in this appeal, we award no taxable costs under MCR 7.219.

/s/ Jane E. Markey
/s/ James Robert Redford
/s/ Kirsten Frank Kelly